NELLIE E. BERGER v. ST. PAUL CITY RAILWAY COMPANY.[1]

June 2, 1905.

Nos. 14,275—(97).

**Personal Injury—Verdict.**

A verdict for $5,000 *held* not excessive for an accident resulting in a miscarriage, producing a condition of anæmia and traumatic neurasthenia and other injuries.

Action in the district court for Ramsey county to recover $10,000 for personal injuries. The case was tried before Olin B. Lewis, J., and a jury which rendered a verdict in favor of plaintiff for $5,000. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Munn & Thygeson,* for appellant.
*Stan J. Donnelly,* for respondent.

1 Reported in 103 N. W. 724.

JAGGARD, J.

In this case the respondent and plaintiff was a passenger on one of the cars of the defendant and appellant street car company on May 17, 1904. As she stepped upon the ground from the car, its gates prematurely closed and caught her dress, throwing her to the ground, dragging her some distance. The jury awarded a verdict for $5,000. From an order denying a motion for a new trial, this appeal was taken.

1. We are of opinion that the testimony was sufficient to justify the jury in finding that the defendant was guilty of actionable negligence. Its detailed statement here would subserve no useful purpose.

2. The defendant's principal contention is that the verdict is so manifestly excessive as clearly to indicate that the jury was actuated by passion and prejudice. The testimony shows that plaintiff was bruised as to her hands, ribs, knees, and right leg; that at the time of the accident she had been pregnant for five or six months; that immediately thereafter she suffered bearing-down pains and flowage; that, pursuant to direction of her attending physician, she was taken to a hospital about a week after the accident, because of expected miscarriage; that the flowage was checked; that she was taken home in an ambulance, and remained in bed, except when seated in an invalid's chair near a window. Her child was born on June 18, a little more than a month after the accident. Instruments were necessarily used in removing the foetus. As a result of the delivery, the mouth of the womb was lacerated. Uncontradicted expert testimony showed that this tearing of the cervix was to some extent a necessity. There is the same difference in the delivery of a premature child that there is in picking ripe or unripe fruit; the ripe fruit comes off readily, and the green fruit is apt to pull or tear something; and so with a premature labor, the neck of the womb has not gotten into that condition where it is as dilatable and ready to go through parturition that it would be at full term. Prior to the accident she was, and always had been, in good health, and weighed from one hundred thirty-nine to one hundred forty-nine pounds. At the time of trial, six months after accident, she weighed one hundred thirteen pounds. Having been constantly under care of physicians, she then suffered from headache, sideache, bearing-down pains, sleeplessness, loss of appetite. She was in a marked condi-

tion of anæmia, due, in a measure at least, to excessive menstrual discharges, and of traumatic neurasthenia. The laceration of the neck of the womb resulted in an inflammation of the lining, membrane of the uterus, extending into adjacent organs, and causing more or less pain and inflammation of the ovaries. There was testimony that an operation would be necessary to repair the laceration and to remove the granulations.

The record thus shows that there was an increased and aggravated mental and physical pain and distress in connection with the miscarriage, in addition to what the mother would have suffered if the child had been born at the proper time, and that her health had been impaired thereby. The damages awarded were confined to the personal injuries of the mother. There was no attempt to recover for maternal anguish, loss of society of the child, or for its prospective earnings. See 1 Joyce, Dam. § 185; Tunnicliffe v. Bay Cities, 102 Mich. 624, 61 N. W 11, 32 L. R. A. 142, and note.

Under such circumstances, we are of opinion that the trial judge, who had an opportunity to see the plaintiff, to judge of her condition, and to weigh the testimony of the experts, properly held that the verdict was not unreasonable, and refused the motion for a new trial. In Shartle v. City of Minneapolis, 17 Minn. 284 (308), a verdict of $4,000, awarded a husband for injuries to his wife resulting in a miscarriage, was sustained. In the City of Chicago v. Leseth, 43 Ill. App. 480, affirmed in 142 Ill. 642, 32 N. E. 428, a verdict of $15,000 was sustained for injuries resulting in the displacement of the womb, the interruption of the natural functions, and constant inflammation and pain, from which the evidence showed that the plaintiff could not recover except by a dangerous operation, and possibly not with that. In North Chicago v. Smadraff, 89 Ill. App. 411, affirmed 59 N. E. 527, a verdict of $5,000 was held not excessive in a case where a woman who had been well and strong before the accident suffered a miscarriage seven months after conception and six weeks after the accident, who had been sick from the time of the accident until the birth, and had hemorrhages, and was confined to childbed for four months.

3. The trial court excluded from the consideration of the jury all elements of permanent injury. It is unnecessary, therefore, to deter-

mine whether or not it was error overruling the defendant's motion to strike out as speculative expert testimony as to predisposition on plaintiff's part to subsequent miscarriage.

Order affirmed.