GERTRUDE MORRIS v. ST. PAUL CITY RAILWAY COMPANY.[1]

August 7, 1908.

Nos. 15,609—(153).

**Negligence—Evidence.**

In a personal injury action, the evidence considered, and *held* sufficient to sustain the finding of the jury that the defendant was negligent and that the plaintiff was not guilty of contributory negligence.

**Miscarriage—Damages.**

When an injury to a woman results in a miscarriage, she is entitled to recover such damages as will fairly compensate her for the pain and suffering occasioned by the miscarriage, but not for the pain and suffering occasioned by the loss of the child.

[1] Reported in 117 N. W. 500.

**Same.**

> The pain and suffering which the mother would have suffered when the child was born in the natural course of events cannot be deducted from the pain and suffering occasioned by the miscarriage, which resulted from the defendant's negligence.

**Damages not Excessive.**

> The damages awarded *held* not so great as to show passion and prejudice on the part of the jury.

Action in the district court for Ramsey county to recover $10,000 for personal injuries. The case was tried before Hallam, J., and a jury which rendered a verdict in favor of plaintiff for $4,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*W. D. Dwyer* and *W. R. Duxbury,* for appellant.

*James R. Hickey,* for respondent.

ELLIOTT, J.

While crossing the street, the respondent, Gertrude Morris, was struck by one of the appellant's street cars and severely injured. In an action against the railway company, based on the alleged negligence of the company in running its car at an excessive rate of speed without keeping it under control and giving proper signals, she recovered a verdict for $4,000. The appeal is from an order of the trial court denying the defendant's motion for judgment notwithstanding the verdict or for a new trial.

1. The question of the defendant's negligence was clearly for the jury. The accident occurred at the intersection of Raymond and Langford avenues, in the city of St. Paul. Street cars run on Langford avenue. Mrs. Morris, after making some purchases at a grocery store, on the northeast corner, started in a southwesterly direction diagonally across Langford avenue. When she reached the first car track, the north track, on which cars run towards the west, and before stepping upon it, she turned and looked partly behind her in the direction from which a car would approach on that track. She testified that there was no car then in sight, but that as she stepped upon the north track she saw a car approaching from the west upon the south track. This car was coming on a downgrade at a very high rate of

speed and she could not safely pass in front of it. She stopped a moment to allow this east-bound car to pass, and was struck by a car going west on the north track. The crossing was at a place which is approached by the cars from both directions on a down grade, although the grade is slightly upward a short distance toward Raymond avenue from the east. Langford avenue in this vicinity forms a curve, so that the cars are not visible in either direction for a very long distance. The cars generally run at a high rate of speed. One witness testified that they usually ran at fully forty miles an hour in the vicinity of the Raymond avenue crossing, except when slowing down for a stop. The defendant's witness testified that the car was approaching at the rate of fifteen miles an hour, and that it slowed down as it approached the other car. The plaintiff's witnesses place the speed much higher, although their figures are not very definite. One witness testified that the car which struck Mrs. Morris came down, "on a thundering speed on the curve—just went tearing through the streets."

The serious question is whether Mrs. Morris exercised proper care for her own safety. The rule which makes it the absolute duty of a person approaching a railway crossing to look and listen does not apply to street railway crossings. Whether, under the circumstances, it is the duty of a person to look and listen for the approaching car, is a question of fact and not of law. But, when a person does look, he is bound to see what is clearly visible and be guided by the knowledge of what he sees. Mrs. Morris testified that she looked east just before she stepped upon the track, and that no car was then in sight. The appellant contends that at that time the car which struck her must have been visible, and that the physical facts disprove her testimony that she did not see the car. The witnesses place the distance at which the car would have been visible at from three hundred to five hundred feet, and at the rate at which the car was coming it would have covered this distance in a very few seconds. There was also some evidence tending to show that the view was somewhat obstructed by posts, trees, and shrubbery. Mrs. Morris testified positively that she looked and did not see the car. Her attention was directed principally to the car which was approaching from the other direction, and, under all these circumstances, it was a question for the jury to determine whether she was guilty of contributory negligence. Peter-

son v. Minneapolis St. Ry. Co., 90 Minn. 52, 96 N. W. 751; Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 439, 74 N. W. 166, 70 Am. St. 341; O'Brien v. St. Paul City Ry. Co., 98 Minn. 205, 208, 108 N. W. 805.

2. At the time of the accident Mrs. Morris was pregnant, and the injury resulted in a miscarriage. The court instructed the jury that, if the plaintiff was entitled to recover damages, they might consider as an element thereof the mental and physical pain which resulted from the miscarriage, but not the mental anguish and suffering caused by the loss of the child. The defendant asked the court to instruct the jury that "the damages in this case must be limited to such physical pain and suffering as was the direct result of the accident, independent of the question of the condition of pregnancy claimed on the part of the plaintiff," and that, "if you should find from the evidence that the act complained of was negligent, and that the accident resulted in a miscarriage, the damages resulting therefrom must be limited to such damages for such suffering and pain as the plaintiff suffered in addition to what she would have suffered and endured had she carried the child the full period. If it should appear that there was an increased or aggravated mental and physical pain and distress in connection with such miscarriage, in addition to what the mother would have suffered if the child had been born at the proper time, or that her health had been impaired thereby, then she would be entitled to recover for such additional pain and suffering as she endured, in addition to what she would have endured as a consequence of her condition. If you find from the evidence that she did not suffer any additional pain from the miscarriage over what she would have suffered, had she borne the child at the expiration of the period at the proper time, then she is not entitled to recover anything for the miscarriage."

The rule of damages for which the appellant contends finds no support in the cases, and is, in our judgment, unsound in principle. It is advanced by Joyce in his work on Damages (section 185), but is not supported by the citations of any authority. Western Union v. Cooper, 71 Tex. 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. 772, and Bovee v. Town, 53 Vt. 183, cited by counsel for appellant, do not hold that a woman who has suffered a miscarriage can recover damages only for the difference in pain and suffering between what she actually suffered

and what she probably would have suffered at some time in the future. The Cooper case was an action against the telegraph company to recover damages alleged to have been caused by the negligent failure to deliver a message summoning a physician to attend a woman in confinement. It was held that there could be a recovery for the increased pain and suffering which resulted to the woman from the absence of the physician. Manifestly no other rule could apply in such a case. The failure to deliver the message and the resulting absence of a physician operated upon an existing condition and thereby increased the pain and suffering. ·

The Bovee case was an action against the town for damages caused by a defective highway, which resulted in injury to Mrs. Bovee and the premature birth of twin children. We find nothing in the case which sustains the appellant's position. It was held that the plaintiff could not recover for the loss of her offspring, as the grief therefor "involves too much an element of sentiment to be left to the conjecture and caprice of a jury. If like Rachel, she wept for her children and would not be comforted, a question of continuing damage is presented, too delicate to be weighed by any scales which the law has yet invented." It was held that "the plaintiff was entitled to recover all damages that were naturally and legitimately consequent upon the negligence of the town. If the violence done her person resulted in the miscarriage, the miscarriage was a legitimate result of such negligence: Any physical or mental suffering attending the miscarriage is a part of it, and a proper subject of compensation. But the rule goes no farther. Any injured feelings following the miscarriage, not part of the pain naturally attending it, are too remote to be considered an element of damages."

In Berger v. St. Paul City Ry. Co., 95 Minn. 84, 103 N. W. 724, the reference to Joyce on Damages is in general terms and in connection with the statement that the damages awarded in that case were properly confined to the personal injuries of the mother, and that there was no attempt to recover for the mental anguish caused by the loss of the child. The court did not intend to affirm the doctrine, advanced by Joyce, that the jury should subtract from the pain and suffering the woman sustained by reason of the miscarriage. the pains of

childbirth which she was due to suffer at the end of her period of pregnancy.

At the time of this accident Mrs. Morris was pregnant, but she was in a natural and normal condition of health. The miscarriage resulted from the negligent act of the appellant, and it should be required to pay the damages which resulted naturally and directly from its negligent acts. The fact that Mrs. Morris would, in the natural course of events, suffer more or less pain and anguish at the birth of her child, cannot be properly taken into consideration. It is too remote, speculative, and uncertain to be taken as a basis for estimating damages. Her possible future suffering has no connection whatever with the suffering which resulted from the negligent act of the appellant. The request for instructions was properly refused.

3. The other assignments of error do not require extended consideration. The evidence as to the physical conditions was not so definite and conclusive as to require the court to give the instruction, as requested, that "the physical facts in this case are such that the plaintiff, having testified that she looked for the car before entering upon the track, must be held to have seen the car, notwithstanding the testimony that she did not see it."

The witness Brimmer was allowed, over the objection of the defendant, to state that the expression upon Mrs. Morris' face was that of a person in great pain. The ruling was correct, under the authority of Isherwood v. H. L. Jenkins Lumber Co., 87 Minn. 388, 92 N. W. 230, and Hall v. City of Austin, 73 Minn. 134, 75 N. W. 1121.

The evidence of the witness Marshall with reference to the speed at which it had been customary to run the trains in that vicinity was not prejudicial to the defendant. It appeared that shortly before July 17, when the accident occurred, the time schedule on the road had been changed so as to require the cars to run at a higher rate of speed at that point. Marshall testified that before the change the cars ordinarily ran at from thirty five to forty miles an hour, unless a stop was to be made at the crossing. In reply to a question, the witness stated that he was referring to the time before the change was made; but, as it appeared that the rate was greater after than before the change, the evidence could not possibly have been legally prejudicial.

The other assignments of error have been examined and found without merit. The verdict is large; but, in view of the nature of the injuries and the impossibility of measuring the damages in such a case by any exact rule, we cannot say that it is so large as to suggest that it is the result of passion and prejudice on the part of the jury. Verdicts for similar amounts in such cases have been approved and sustained. Shartle v. City of Minneapolis, 17 Minn. 284 (308); Berger v. St. Paul City Ry. Co., 95 Minn. 84, 103 N. W. 724; North Chicago v. Smadraff, 89 Ill. App. 411, affirmed 189 Ill. 155, 59 N. E. 527.

The order of the trial court is therefore affirmed.