**E. I. DU PONT DE NEMOURS & CO., Inc., v. FRECHETTE.**

No. 13452.

Circuit Court of Appeals, Eighth Circuit.

April 30, 1947.

A. R. Johanson, of Wheaton, Minn., for appellant.

M. J. Timmons, of Minneapolis, Minn. (J. Frank Boyles, of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the plaintiff (appellee) in an action brought against the defendant (appellant) to recover damages for personal injuries. Briefly stated, the questions presented are:

1. Does the Minnesota Workmen's Compensation Act, Chap. 176, Minnesota Statutes 1941 [Minnesota Statutes 1945 and M.S.A.] prevent a subcontractor's employee, who has received workmen's compensation from his employer, from maintaining an action for negligence against the general contractor, when both the general contractor and the subcontractor were engaged on the same construction project and were both subject to the Act?

2. Did the trial court err in declining to charge the jury that if the plaintiff's injuries were caused by the negligence of a fellow employee, the verdict must be for the defendant?

3. Was it error to instruct the jury that there was no evidence that the plaintiff was himself negligent?

The accident out of which this case arose occurred near Rosemount, Minnesota, on December 12, 1942, on land acquired by the Government for the Gopher Ordnance Plant, then in the course of construction. The defendant had agreed to construct the plant under a contract with the Government. The defendant sublet much of the work, but retained supervision and control of it. The Philip Carey Manufacturing Company (hereinafter referred to as the Carey Company) was one of the subcontractors. It agreed to supply and install asbestos covering for pipes. The plaintiff was an employee of the Carey Company.

At the time of the accident, the plaintiff was upon the platform of a temporary scaf-

fold erected by his employer. The platform was about 10 feet from the ground. The plaintiff was engaged in applying asbestos covering to a large pipeline which ran east and west and was about 2½ feet higher than the platform. The scaffold consisted of wooden uprights and crossbars. The platform was made of planks laid over the crossbars and wired to them. The ends of the planks, at the time of the accident, extended about 2½ feet westerly beyond a crossbar which was contiguous to an ungraded road or lane which ran north and south and passed under the pipes. This road was used by those engaged in the construction work.

The defendant had a truck which it used for the transportation of men and material in aid of construction. The truck had a cab with a canvas-covered box behind it. The box was about seven feet high, seven feet wide, and twelve feet long. The top of the box was higher than the top of the cab. There was about two feet of clearance between the top of the truck and the pipes upon which the plaintiff was working. Between 8:15 and 8:30 o'clock on the morning of the accident, the truck driver, an employee of the defendant, drove the truck south, under the pipes. There was then no obstruction in the road "except the planks from the scaffold protruding into the road from the east side," to the driver's left as he drove under the pipes. There was a 25-foot space on which to drive. There were poles on each side of the roadway. About ten or fifteen minutes later, the truck driver drove the truck north on the same road. He had two men with him, one in front and one behind. As he approached the pipes, he noticed that an A-ladder had been placed by the scaffold-builders of the Carey Company in about the center of the road. William J. Myers, who was employed by the Carey Company in connection with the erecting of the scaffold, was on the road, under the pipes. The driver testified that he stopped the truck and signaled to Myers to push the A-ladder to the west; that Myers shook his head and motioned the driver to come through; that Myers walked ahead of the truck, then turned and faced it, and, after looking to the right and left of the truck, signaled the driver to

come ahead; that the driver then put the truck in low gear and proceeded slowly under the pipes and was not aware of striking anything until the man in the back of the truck told him to stop, turn around, and see what had happened to a man he had knocked off the scaffold. The top of the truck had caught the ends of the planks where they protruded into the roadway, causing the plaintiff to be thrown to the ground and injured.

The plaintiff received workmen's compensation from the insurer of his employer. In 1944 he brought this action in the State District Court against the defendant, attributing his injuries to the negligence of its truck driver. The defendant removed the case to the United States District Court on the ground of diversity of citizenship. The defendant denied that its truck driver was negligent, and alleged that the plaintiff's injuries resulted from his own negligence and that of other employees of the Carey Company. The defendant also alleged that, under the Minnesota Workmen's Compensation Act, the plaintiff could not maintain his action.

The District Court ruled that the plaintiff could maintain the action. The court declined to submit to the jury the issue whether the alleged negligence of Myers caused the accident. The court submitted the issue of the truck driver's alleged negligence, but instructed the jury that there was no evidence that the plaintiff was guilty of any negligence.

The controlling law is that of Minnesota. The defendant is of the opinion that the plaintiff was prevented from bringing this action by the provisions of Subdivision 1 of Section 176.06, Minnesota Statutes 1941 [Minnesota Statutes 1945 and M.S.A.] reading as follows:

"Subdivision 1. Where an injury or death for which compensation is payable under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party being at the time of such injury or death insured or self-insured in accordance with section 176.03, the employee in case of injury, or his dependents in case of death, may, at his or their option, proceed either at law against such party to recover dam-

ages or against the employer for compensation, but not against both.

\*     \*     \*     \*     \*     \*

"The provisions of subdivision 1 of this section shall apply only where the employer liable for compensation and the other party or parties legally liable for damages were both either insured or self-insured and were engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise."

█ The original Minnesota Workmen's Compensation Act was adopted in 1913. Chap. 467, Laws of Minnesota 1913. The purpose of the legislation was to provide more certain, effective, speedy, and inexpensive relief for injured workmen than was afforded by the common-law rules of negligence, and measurably to place upon industry the burden of the economic loss resulting from the deaths and injuries of workmen engaged in industry. Mathison v. Minneapolis Street Railway Co., 126 Minn. 286, 148 N.W. 71, L.R.A.1916D, 412.

The original Act was divided into two parts. Part 1 preserved to employers and employees who elected not to come under Part 2 their rights and remedies under the law of negligence, subject to certain conditions and limitations. Part 2, which provided definite compensation for injury or death occurring in the course of employment, regardless of fault, applied to employers and employees who chose to become subject to Part 2. Mathison v. Minneapolis Street Railway Co., supra.

For the purposes of compensation, Part 2 of the Act virtually treated all employers who were subject to its provisions as though they constituted the common employer of all employees who were also subject to Part 2; this apparently upon the theory that the Act furnished an adequate and efficient remedy and a fair measure of compensation. Section 33 of the original Act (the third-party liability section) provided, in substance, that if an employee was injured under circumstances which entitled him to compensation from his employer and also created a liability against a third

party who was also subject to Part 2, the employee could obtain from his employer the compensation provided in Part 2, or could sue the third party, but could not do both. In case he elected to sue the third party, his recovery was limited to the compensation prescribed by the Act. If the employee elected to take compensation from his employer, the employer could recover from the third party what the employer had paid his employee as compensation, with costs and reasonable attorney's fees. Mathison v. Minneapolis Street Railway Co., supra.

In 1921 the Legislature re-enacted the Workmen's Compensation Act, without changing the substance of the third-party liability provisions. See Section 31, Chap. 82, Laws of Minnesota 1921. In 1923 the Legislature amended these provisions. Chap. 279, Laws of Minnesota 1923. There has been no change in them since that time, although in 1937 the Act was made nonelective. Chap. 64, Laws of Minnesota 1937. The amendment of 1923 made it clear that, as against a third party, subject to the Act, whose business was unrelated to that of the employer, an injured employee might maintain an action for common-law negligence in an unlimited amount, regardless of the fact that he had received compensation from his employer. Instead of treating, for purposes of compensation, all employers who were subject to Part 2 of the Act as a common employer of all employees also subject to Part 2, the Legislature adopted the policy of treating as a common employer of such employees, only those employers, subject to Part 2, who "were engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof." See Rasmussen v. George Benz & Sons, 168 Minn. 319, 325, 210 N.W. 75, 212 N.W. 20. The language used by the Legislature to express its intention was general. It was not easy to determine how far it opened the door to the bringing of personal injury actions by injured employees, who had received compensation, against third parties who were subject to the Act. The interpretation of

322

the general language has given the courts of Minnesota difficulty.[1]

In the instant case the defendant and the Carey Company, its subcontractor, were "engaged * * * in furtherance of a common enterprise, or * * * the accomplishment of the same or related purposes," if the quoted words are given their usual and ordinary meaning. Compare, Olson v. Thiede, 177 Minn. 410, 225 N.W. 391; and Seidel v. Nicollet Ave. Properties Corp., 202 Minn. 569, 279 N.W. 570. The "common enterprise" was the construction of the Gopher Ordnance Plant for the United States. The "related purposes" were to construct the plant for the Government. However, the Supreme Court of Minnesota, in Gleason v. Geary, 214 Minn. 499, 8 N.W.2d 808, has apparently held that the employer and the third party may not be considered as engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes unless their employees are, at the time and place of the injury, exposed to the same or similar hazards. An employee driving a truck cannot reasonably be said to be exposed to the same risks as an employee who is required to work upon a temporary scaffold ten feet above the ground for the purpose of covering pipes with insulation.

██ It is true that there is some discussion in the majority opinion in the Gleason case which lends support to the defendant's argument that it was the intention of the Legislature that a subcontractor's employee who had received compensation from his employer could not maintain an action for negligence against the general contractor as a third party. It is possible that in a case such as this the Supreme Court of Minnesota would decline to apply the rule announced in the Gleason case. The soundness of the relativity of hazards test as applied to employers and workmen engaged upon the same construction project seems questionable. Nevertheless, we think that the District Court was justified, because of the Gleason case, in ruling that the plaintiff could maintain his action. It must be remembered that, so far as the federal courts are concerned, a State statute means all that the Supreme Court of the State has decided that it means. The District Court has placed the same construction upon the majority opinion in the Gleason case as did Mr. Justice Peterson in his dissenting opinion.[2] See, also, 27 Minnesota Law Review 585-588. In ruling that the plaintiff could maintain this action, we think the District Court reached a permissible conclusion. Compare, Russell v. Turner, 8 Cir., 148 F.2d 562, 564, 566.

Did the District Court err in declining to submit to the jury the issue of the alleged negligence of Myers, the Carey Company's employee who had to do with the erection of the scaffold and the placing of the A-ladder in the center of the road, and who, according to the defendant's evidence, declined to remove the ladder and undertook to guide the truck past this obstruction?

---

[1] See: Minnesota Digest, Vol. 17, Workmen's Compensation, ☞2158–2180; Minnesota Statutes Annotated, Vol. 13, § 176.06, pages 197–218 and cases cited; Dunnell's Minnesota Digest, Vol. 6, pages 1027, 1028 and cases cited in footnote 91 on page 1028; Dunnell's Minnesota Digest Supp., Vol. 6, page 485, footnote 91; 1941–1946 Cumulative Pocket Part to Dunnell's Minnesota Digest Supp., Vol. 6, footnote 91 on pages 329 and 330; 27 Minn.Law Review 585.

[2] "The court reaches its decision by the process of construction. This process is that the language of the statute is of doubtful meaning; that construction must be invoked to discover the true meaning; that, although the statute in terms provides that an employe shall not have a right of action against a third party subject to the act, who is engaged with the injured employe's employer in furtherance of a common enterprise or in the accomplishment of the same or related purposes, the real intention was not to deprive an injured employe of such right of action unless in addition the employes of the third party and of the injured employe's employer were exposed by the work being done to the same or similar risks, for the reason that the statute is one to restore employe's rights of action against third persons, and that, if not for other reasons, such a result is compelled in order to avoid unconstitutionality resulting from distinguishing between injured employes and others in their right to sue others than their employers. To make such a construction possible, all our cases inconsistent with the results announced are overruled. * * *" Page 513 of 214 Minn. page 815 of 8 N.W.2d.

■ The accident was, no doubt, caused by negligence. It may have been caused by the negligence of Myers or other employees of the Carey Company. It was the duty of the Carey Company to furnish the plaintiff a safe scaffold on which to work and to do nothing which would make it dangerous.

Taking the most favorable view of the defendant's evidence, the jury could have found that the truck driver did what an ordinarily prudent man in his position would usually have done under the same or similar circumstances. The jury, we think, reasonably could have inferred from the evidence that Myers, as an employee of the Carey Company, was careless in permitting the ends of the planks to project into the roadway, in obstructing the roadway while in use, in not removing the obstruction to permit the truck to use the center of the road, and in guiding the truck past the obstruction. Had there been no Compensation Act, and had the plaintiff sued the defendant and the Carey Company jointly, the jury, under the evidence, could, we think, have returned a verdict against either or both.

■ It is our opinion that the defendant was entitled to have its defense that the accident was caused by the negligence of an employee or employees of the Carey Company presented to the jury. The issue was in the case under the pleadings and the evidence. We think that the jury should have been advised, in substance, that if it found that the accident was caused solely by the negligence of Myers or that of other employees of the Carey Company, the verdict would be for the defendant, since, in that event, the plaintiff's only remedy was against his employer under the Workmen's Compensation Act and the plaintiff had been paid the compensation to which the Act entitled him. The defendant's requested instruction,[3] while not in perfect form, was sufficient to call the court's attention to its failure to inform the jury that the plaintiff could not recover if his injuries were due solely to the negligence of one or more of his fellow employees. Compare, Feldmann v. Connecticut Mutual Life Ins. Co. of Hartford, Conn., 8 Cir., 142 F.2d 628, 631.

■ The contention of the defendant that the issue of contributory negligence should have been submitted to the jury is without merit. The plaintiff was entitled to assume that the scaffold upon which he was working was safe and that nothing had been done or would be done to make it unsafe. He was justified in giving his undivided attention to the work assigned to him. He was not required to anticipate that there was danger of a collision between the platform and the top of a truck. Compare, Phillips Petroleum Co. v. Miller, 8 Cir., 84 F.2d 148, 154, 155.

Other questions argued in the briefs are unlikely to arise upon a new trial, and need not be discussed.

The judgment appealed from is reversed, and the case is remanded for a new trial.

---

[3] "You are instructed that if you should find that William J. Myers was negligent in the premises and in connection with the accident from which plaintiff was injured and that such negligence was the proximate cause in a substantial way of plaintiff's injuries then you must find a verdict for the defendant."