**CHICAGO & N. W. RY. CO. v. GREEN.**

**No. 13558.**

Circuit Court of Appeals, Eighth Circuit.
Oct. 27, 1947.

Alfred E. Rietz, of St. Paul, Minn. (Lowell Hastings, of Chicago, Ill., on the brief), for appellant.

Sidney S. Feinberg, of Minneapolis, Minn. (Tom Davis and Carl L. Yaeger, both of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The appeal is from a judgment recovered by a brakeman against the Chicago and North Western Railway Company, on a jury trial, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries sustained in a derailment.

The train involved was a passenger train of 16 cars running from Chicago to Omaha. The derailment occurred about 3½ miles west of Colo, Iowa. The last 6 cars of the train and the rear wheels of the preceding car all left the track. This resulted in the rails being torn up for some distance, as the train was being brought to a stop.

When the track left standing was examined, it was found that one of the rails had broken or snapped off about 12 to 15 inches from the point where it was joined to the preceding rail.

According to the testimony of plaintiff, the rail "looked like it had been partly broken before", in that the break "sort of looked part new and part rusty." He testified also that some of the ties were torn out and broken by the derailment and that "these ties were rotten—they were spongy-like." "Where they had broken in two, you could see the inside was solid and the outer side was rotten and soft." He further testified that at Clinton, Iowa, a "slow order" had been given the crew, which directed them "to run slow for a mile and a half" on leaving Colo. The cross-examination of the engineer showed that the train was running between 50 and 60 miles per hour as it approached the place of the derailment and that it was somewhat late.

Plaintiff was the rear brakeman on the train and was sitting in the smoking compartment of the last car at the time of the accident. He claimed to have been thrown to the floor under a wash basin and to have struck his back on some pipes, with the result that a herniated intervertebral disc developed.

The complaint relied upon the doctrine of res ipsa loquitur. It also, however, contained a general allegation that "Defendant so negligently, recklessly and carelessly controlled, managed and operated said train that the same was caused to be derailed." On the trial, plaintiff further orally requested and was granted leave to amend the complaint "so that it may allege in substance that the defendant so negligently conducted its general business of railroading and was so negligent * * * that the train upon which the plaintiff was employed was caused to be wrecked." No formal amendment of the complaint itself was made.

To show the cause of the accident and the absence of any negligence on its part, defendant undertook to prove that the derailment was due to a transverse fissure, i. e., to an internal defect and deterioration

in the head of the rail; that this fissure had spread over 30 per cent of the head and produced a weakness that made the rail break and snap off as the engine and the first cars of the train passed over it; that the fissure was not externally visible and so could not be detected in the patrol inspections which defendant daily made of its tracks and roadbed; that the only means known for detecting such an internal fissure was by the use of a special electrical-contact machine, known as the Sperry detector, which was not purchasable but was merely rentable from the manufacturer, and which defendant had thus rented and run over its tracks twice a year; and that such a test with the Sperry detector had last been made of the rails involved 4½ months before the accident, at which time all the rails in the track which the detector then showed to be fissured were removed and replaced.

To further establish that the rail was not previously broken, defendant also showed that the engine was equipped with an electrical signal box in front of the engineer, which would turn red at a distance of 11,000 feet from a broken rail or other traffic obstruction, such as a train ahead, that disrupted the electrical circuit in the track; that the signal box was part of an automatic train control system and whenever it thus was caused to turn red, unless the engineer immediately pushed an acknowledging lever and assumed control of the brakes, the brakes would set mechanically and the speed of the train would be reduced to 17 miles per hour; that on the occasion in question, according to the engineer's testimony, the signal box did not turn red until "just about the place where it [the rail] went out"; and that the engineer thereupon immediately applied the brakes and sought to bring the train to a stop.

Defendant contends that on this explanation and showing it was entitled to a directed verdict and that the trial court erred in denying its motion. But assuming that the fissure was the cause of the breaking of the rail and of the wreck, the question whether defendant had exercised reasonable care to avoid the accident was still one of fact for the jury and not one of law for the court. For instance, the court could not on the testimony have declared as a matter of law that a use of the Sperry detector more often than once every six months would have been physically, practicably or economically impossible, or that it was not otherwise reasonably necessary. As a matter of fact, it was not even shown that such a semi-annual use constituted the recognized standard in the railroad world for dealing with the technical problem.

Again, if the evidence as to the order given at Clinton to run the train slow on leaving Colo was properly admitted by the trial court (which question will be later considered), the engineer's admission that the train was late at the time and was traveling at 50 to 60 miles per hour also made the situation subject to the inference, in the light of the "slow order", that defendant had not fully explained all the circumstances connected with the accident and that a disregarding of the "slow order" (the reason for whose issuance was not shown) may perhaps have been a factor in the derailment. Further, the testimony of plaintiff, if believed, that the break in the rail seemed to be "part new and part rusty" and "looked like it had been partly broken before", and that the ties were "rotten and spongy-like", when considered with the evidence of speed and the engineer's admission that a mere partial break in the rail might not disrupt the electrical circuit, so as to cause the signal box in the engine to turn red as the train approached the point, similarly could be accepted by the jury as elements of inference on the inabsoluteness of defendant's explanation of the accident and on its possible causative factors.

■■ In connection with what we have said, there must be kept in mind the emphasis in the recent decisions of the Supreme Court that the scope of jury inference in cases under the Federal Employers' Liability Act must be liberally and not narrowly or stultifyingly viewed. See Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Bailey v. Cen-

tral Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. Cf. also Chicago & N. W. R. Co. v. Grauel, 8 Cir., 160 F.2d 820. And traditionally, even more plenary than in cases requiring proof of specific negligence is the scope of inference which has been recognized as being open to a jury in situations of res ipsa loquitur.

Thus, it was said in the somewhat early case of Gleeson v. Virginia Midland Railroad Co., 140 U.S. 435, 444, 11 S.Ct. 859, 862, 35 L.Ed. 458: "When [the plaintiff] proves the occurrence of the accident, the defendant must answer that case from all the circumstances of exculpation, whether disclosed by the one party or the other. * * * And it is for the jury to say, in the light of all the testimony, and under the instructions of the court, whether the relation of cause and effect did exist, as claimed by the defense, between the accident and the alleged exonerating circumstances."

■ Only where the defendant's evidence of explanation and exculpation is so legally absolute that no possible hypothesis of proximate negligence can reasonably survive it on the facts and circumstances of the accident is a court entitled to direct a verdict in a res ipsa loquitur case. Cf. Myers v. Pittsburgh Coal Co., 233 U.S. 184, 193, 34 S.Ct. 559, 58 L.Ed. 906. And these in cases under the Federal Employers' Liability Act will be situations of "the rarest exceptions". Terminal R. Ass'n of St. Louis v. Staengel, 8 Cir., 122 F.2d 271, 276, 136 A.L.R. 789. See also Southern Ry. Co. v. Hussey, 8 Cir., 42 F.2d 70, 73, 74, 74 A.L.R. 1172.

Of even more specific application here is the recent decision of the Supreme Court in Jesionowski v. Boston & M.R.R., 329 U.S. 452, 458, 67 S.Ct. 401, 404, 91 L.Ed. ——, which, like this, was a derailment case and in which the court said: "Derailments are extraordinary, not usual, happenings. When they do occur, a jury may fairly find that they occurred as a result of negligence. * * * It would run counter to common everyday experience to say that, [where the defendant was the exclusive controller of all the factors which may have caused the derailment] the jury was without authority to infer that either the negligent operation of the train or the negligent maintenance of the instrumentalities [involved] was the cause of the derailment."

■ The evidence which has been set out above and the authorities cited make unnecessary, we think, any further discussion of defendant's contention that there was no basis for allowing the jury to decide whether defendant had been guilty of proximate negligence in the operation of its train or in the maintenance of its track and roadbed. For the court to have taken these questions from the jury, as defendant requested, would clearly have been error.

■ Defendant further contends that, if the case was one for the jury, it was error for the court to deny its request for a specific instruction on its explanation and defense that the derailment was due solely to the development of a fissure in the rail and that this fissure could not have been discovered by the exercise of reasonable care so as to make defendant chargeable with responsibility for the accident.

The instruction, which was timely requested, was in the following language: "There is evidence in this case that the derailment in question was caused by the breaking of the rail in the track. There is also evidence that the breaking of the rail was caused by what is known as a fissure in the rail. The defendant contends that a fissure is a progressive deterioration of the rail and that the fissure could not have been discovered by the exercise of reasonable care or inspection of the rail by the defendant. You are instructed that if you find by a fair preponderance of the evidence in this case that the derailment was caused by a fissure and that such fissure could not have been seen or that it could not have been discovered by the defendant by the exercise of reasonable care, then your verdict must be for the defendant."

The court instructed generally as a matter of res ipsa loquitur that the jury might "draw an inference of negligence on the part of the defendant, in the absence of an explanation by the defendant that the accident did not arise from its want of reasonable care"; that it was for the jury "to decide whether the defendant in this case made explanation that satisfies you"; that

if the jury found that plaintiff was injured in the accident and "that the accident and injuries to the plaintiff were the result of the failure of the defendant to use due care in the operation of its train or its failure to have and maintain its tracks and roadbed in a reasonably safe condition, then the defendant was negligent and if such negligence was, in whole or in part, the proximate cause of the accident, then your verdict should be for the plaintiff"; and that if the jury found that there had been no such negligence on the part of the defendant, or that if the defendant had been negligent but its negligence was not the proximate cause of the accident, or that the plaintiff, as claimed by the defendant, had not been injured in the accident, then a verdict should be returned for the defendant.

The instructions made no direct reference to the matter of a fissure, except in the enumeration to the jury of the undisputed facts, where the court merely said: "It is admitted that there was a fissure in the rail at the place where it was broken."

The requested instruction sought to expressly put before the jury defendant's theory of the accident and to apply concretely to that theory, if the jury accepted it, the test for determining defendant's liability in the situation. Defendant, in providing in the instruction that "a fair preponderance of the evidence" was necessary to entitle the jury to find that the derailment was caused solely by the fissure and that defendant could not have discovered the fissure through the exercise of reasonable care in maintaining or inspecting its tracks, had imposed upon itself a greater burden than it legally was required to assume, but this obviously could not constitute error against the plaintiff which would justify the refusing of the instruction. In the technical scales of liability, it is of course the existence of negligence and not its non-existence that is required to be preponderantly established in a res ipsa loquitur case, as in any other, either on the basis of the general inferences possible in such a situation or of any specific proof of lack of care which the evidence may show.

We think the refusal of the court to give the requested instruction, either in its tendered form or in a restatement of its material substance, was error. It has long been the rule that, as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made. 53 Am.Jur., Trial, § 626, pp. 487, 488. See also Western Union Tel. Co. v. Morris, 8 Cir., 105 F. 49, 54; Northern Central Coal Co. v. Hughes, 8 Cir., 224 F. 57, 59; Ranney v. Barlow, 112 U.S. 207, 214, 5 S.Ct. 104, 28 L.Ed. 662; Pennock v. Dialogue, 2 Pet. 1, 15, 27 U.S. 1, 15, 7 L.Ed. 327. In fact, even a request for an instruction which is not entirely perfect may in some situations impose upon the court the duty to give a more specific instruction on a particular issue, where it soundly appears that such an instruction is needful to enable the jury to intelligently determine the question. Cf. E. I. Du Pont De Nemours & Co. v. Frechette, 8 Cir., 161 F.2d 318, 323; Feldmann v. Connecticut Mutual Life Ins. Co., 8 Cir., 142 F.2d 628, 631; Pfotzer v. Aqua Systems, 2 Cir., 162 F.2d 779, 783.

As we have indicated, the court had instructed that the jury was entitled to draw an inference of negligence against defendant in its operation of the train or in its maintenance of the tracks and roadbed, "in the absence of an explanation by the defendant that the accident did not arise from its want of reasonable care", and that it was for the jury to decide whether defendant had made such an explanation as satisfied it. With the matter thus broadly left to the jury, the importance to the defendant of having the court further call to the jury's attention that the explanation and defense which the defendant had undertaken to make were that the accident was caused solely by a fissure in the rail, which it contended it had used reasonable care to detect and by the use of such care could not have discovered or guarded against, and that if the jury so found then defendant would not be liable, would seem to be obvious. The court should have given the requested instruc-

tion or a restatement of its material substance.

The contention also is made that the court's charge in fact imposed an improper standard of duty upon defendant in the maintenance of its tracks and roadbed. We have previously quoted the portion which told the jury that if "the accident and injuries to the plaintiff were the result of the failure of the defendant to use due care in the operation of its train *or its failure to have and maintain its tracks and roadbed in a reasonably safe condition,* then the defendant was negligent". (Emphasis added.) Defendant argues that this language made it in practical effect an insurer of the condition of its tracks and roadbed because its liability was made to depend upon whether it had failed to have and maintain such facilities in a reasonably safe condition and not upon whether it had failed to exercise reasonable care to see that they were in such condition and to keep them so.

■ An employer is of course not an insurer under the Federal Employers' Liability Act, but his liability is for negligence in not having exercised due care generally on the circumstances of the particular situation or in having failed to perform an express statutory duty. Ellis v. Union Pacific R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. ——; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610, 143 A.L.R. 967; Sheaf v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 162 F.2d 110, 113.

■ A literal reading of the language here complained of would make it subject to the objection urged by defendant. But we think the words "to use due care" are reasonably impliable in context from the preceding clause of the instruction, so that this portion should and would be read as "failure [to use due care] to have and maintain its tracks and roadbed in a reasonably safe condition". That this is its natural import from context is confirmed by the fact that defendant itself apparently so understood and accepted it at the time, for it did not on the trial make the objection which it now urges. Furthermore, consideration of any defect in an instruction to which a party has failed to make objection in the trial court under Federal Rules of Civil Procedure, Rule 51, 28 U.S.C.A. following section 723c, is a matter of grace, and not of right, for an unusual and inherently unfair situation only. No such situation is involved on the present instruction.

■ A number of errors are alleged in the admission of evidence and in refusals to strike. On these contentions generally, it is necessary to keep in mind first of all that "Rulings on the admissibility of evidence must normally be left to the sound discretion of the trial judge in actions under the Federal Employers' Liability Act." Lavender v. Kurn, 327 U.S. 645, 654, 66 S.Ct. 740, 744, 90 L.Ed. 916.

■ It is argued that the court erred in allowing plaintiff to show the condition of the ties, as not being within the allegations of the complaint. A complaint based on res ipsa loquitur is only required to make a general allegation of negligence, and on such an allegation the plaintiff is entitled to show all the conditions and circumstances surrounding the accident not patently wholly remote. 38 Am.Jur., Negligence, § 262, pp. 954, 955. And, if the original allegation in the complaint here, that the derailment was due to defendant's negligence in the operation of its train, could be said to have limited the cause of the accident to that field and to have excluded any right of reliance by plaintiff upon the condition of the tracks and roadbed, the leave given during the course of the trial to amend the complaint, to allege that defendant was so negligent in the conduct of its general business of railroading that the train was caused to be derailed, clearly made the complaint broad enough to cover any proximate negligence that may have existed in either the operation of the train or the maintaining of the tracks and roadbed or both.

■ Evidence was admitted showing that after the accident plaintiff did not go out as a brakeman except when he drew an easy run and that this gave rise to complaints on the part of the other extra-

board men. Defendant had objected that the testimony as to the complaints by the other men was immaterial. It would seem to be wholly immaterial, as defendant contends, whether or not the other men complained of plaintiff's failure to take his regular extra-board turn, but proof of the fact clearly was not of such prejudicing dignity as to amount to reversible error.

 A brakeman who had worked with plaintiff after the accident testified that plaintiff appeared to be in great pain when he was out on his run, and the court refused to strike this testimony as conclusionary. It is competent for any witness to testify from observation that a person appeared to be in pain. Isherwood v. H. L. Jenkins Lumber Co., 87 Minn. 388, 92 N.W. 230; Morris v. St. Paul City Ry. Co., 105 Minn. 276, 117 N.W. 500, 502, 17 L.R.A.,N.S., 598; Sturm v. Northwest Mills Co., 114 Minn. 420, 131 N.W. 472, 474. The court similarly was entitled to refuse to strike the testimony of another brakeman, who also had worked with plaintiff after the accident and assisted him in performing some of his duties, that plaintiff "couldn't get down underneath [the cars] and uncouple the steam, or couple it." It is within the discretion of the trial court in an action under the Federal Employers' Liability Act to allow a nonprofessional witness, familiar with the nature of the plaintiff's work and having observed his performance of his duties after the accident, to testify that he appeared to be unable to perform certain of his tasks. Cf. United States v. Woltman, 61 App.D.C. 52, 57 F.2d 418, 420. And similarly, though the testimony by plaintiff that he would go back to work if he were able was unnecessary and of little probative value, it was within the discretion of the trial court to allow him to so state, in view of defendant's contention that he had no such injury as he claimed and could have gone back to his brakeman's job if he had wanted to work.

 As heretofore indicated, the court admitted testimony by plaintiff that a "slow-order" was received at Clinton, over objection by defendant that this was not the best evidence. To make reference to a document by its common designation, even though the designation may in some measure be a characterization of the contents, is elementarily not a violation of the best evidence rule. The term "slow order" here would seem to be in the same category as such designations as general warranty deed, notarial commission, discharge papers, etc. It is true that counsel for plaintiff carried the matter further and succeeded in getting the contents of the slow order into the record on another and leading question, "Do you know whether or not in leaving the town of Colo there was an order or direction to run slow for a mile and a half?" But the record shows that counsel for defendant made no objection to the question until after it was answered, and it does not indicate any reason for the tardiness. It is within the discretion of the trial court to allow testimony, which is not the best evidence, to stand, where opportunity to object has existed but is not exercised until after the testimony is given. In addition to this, the contents of the slow order were again brought out on the cross-examination of the engineer, wholly without any objection by the defendant. The contents of a written order regulating the operation of a railroad train, the violation of which is relied on as negligence, ordinarily are within the application of the best evidence rule (Schroble v. Lehigh Valley R. Co., 2 Cir., 62 F.2d 993, 996), but it cannot be said here that the best evidence rule has been breached.

 It is contended also that the court erred in granting leave to plaintiff, during the course of his case in chief, to amend his complaint to "allege in substance that defendant so negligently conducted its general business of railroading and was so negligent * * * that the train upon which the plaintiff was employed was caused to be wrecked." The argument that this amendment was too indefinite requires no answer beyond what has already been said in regard to a res ipsa loquitur situation generally. And to the argument that, if the amendment was sufficiently definite, it nevertheless came too late, we need only observe that there was no such showing of surprise or other un-

fairness as would prompt us to declare that there had been an abuse of discretion, and the fact that, after the leave to amend was granted, defendant apparently did not think that there was any reason for it to seek a continuance confirms our view.

■ Reversal further is sought on the argument of plaintiff's counsel to the jury. Defendant, however, did not make any objections during the course of the argument or take any exceptions at its close, but it waited until after the court instructed the jury before it made known that it desired to challenge the argument. A party is not entitled as a matter of right to seek a reversal for improper argument to the jury, where he fails to make objections during its course or to take exceptions promptly at its close. One of the reasons for the rule is to enable the trial court to deal with the matter while it is fresh and to permit it to make any formal or informal additions to its instructions, if it deems this necessary.

The principles governing the review of improper arguments were fully stated in London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 344, as follows: "In the future, to secure from this court, as a matter of right, a reversal of a judgment because of improper remarks of counsel in an argument made to a jury, the [record] must contain all arguments in full and must show, either that adequate objections * * * were taken during the argument complained of, or that such remarks were specifically excepted to *at the close of the argument.* While failure of a party to take proper exceptions will not deprive this court of its power to grant a new trial in the public interest, we think there is no reason why that power should be exercised in such a case except under the most unusual circumstances." (Emphasis added.)

We are not disposed to regard the situation here as one of such unusual circumstances as should prompt us to use our discretionary power to set aside the judgment in the public interest because of the argument made to the jury, but an observation or two ought perhaps to be added. A trial court ordinarily should squelch on its own initiative any such appeals to class prejudice in a jury argument as the following made by plaintiff's counsel: "We find a man against whom prior to this time not a word could be said,—just an ordinary laboring man. Are the laboring men of this country frauds? Are the laboring men of this country cheats? Does it follow, men and women, that every time a man is injured on a train by a railroad that some strange metamorphosis takes place in that man's mind and he becomes a fraud and a cheat?"

There are other statements in the argument which we think probably will want to be reread and considered by counsel before they are repeated on a retrial. We need not, however, discuss the argument further, for there is no reason for us to anticipate that the same things will be said again. And our previous decisions do not leave the bounds of proper argument in a federal court case unknown. See London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 338–344; Chicago & N. W. Ry. Co. v. Kelly, 8 Cir., 74 F.2d 31, 36, 37; Id., 8 Cir., 84 F.2d 569, 573–576; Union Pac. R. Co. v. Field, 8 Cir., 137 F. 14. See also New York Central R. Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706; Minneapolis, St. P. & S.S.M.R. Co. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243.

■ Defendant's final contention is that the judgment should be reversed for excessiveness of the verdict. The verdict was for $16,458. A Circuit Court of Appeals will not review the verdict in a tort action for excessiveness or inadequacy of its amount. Wabash Railway Co. v. McDaniels, 107 U.S. 454, 456, 2 S.Ct. 932, 27 L.Ed. 605; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439; Chicago & N. W. Ry. Co. v. Kelly, 8 Cir., 74 F.2d 31, 37.

The judgment is reversed and the cause remanded for a new trial, because of the refusal to give defendant's requested instruction on the theory of its defense.