RANNEY, Administrator, v. BARLOW & Another..

IN ERROR TO THE CIRCUIT .COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Argued October 20, 21, 1884.—Decided November 3, 1884.

A & B, residents in New York, were owners of one undivided half of a tract of land in Cleveland. C, residing in Cleveland, was owner of the other undivided half. A & B gave C their power of attorney to sell their undivided half in a proposed sale to a railroad company. C sold the whole tract for $500,000, the consideration being $200,000 for the half belonging to A & B, and $300,000 for the half belonging to C, and A & B received the said consideration coming to them. At the trial of an action brought by A & B against C to recover one-half of the surplus above $200,000 received by him, there was evidence tending to show that A & B before sale consented that C might negotiate for the sale of the whole tract, and get what he could for his own half, if he got $200,000 for their moiety. *Held*, That a charge that the plaintiffs were entitled to recover unless the defendant informed them at what price he could sell or had sold his share and they assented to it, virtually withdrew this evidence from the jury, and instructed them that nothing but the assent of A & B after the sale could be effectual; and that it was error.

This was an action at law brought by the defendants in error, Samuel L. M. Barlow and Charles Day, against the plaintiff in error, Silas S. Stone. The petition was framed according to the rules prescribed by the code of Ohio, and was "for money only."

The action, generally stated, was based on the following averments of the petition, to wit, that the defendant, being the joint owner in common with the plaintiffs of a tract of land, and being their agent to take care of and negotiate sales of the land, either in parcels or as a whole, sold the entire tract for $500,000, paid them $200,000 of the purchase money, and frudulently retained. $300,000 for himself. The suit was brought to recover $50,000 and interest, that sum being, as the petition alleged, the share of the plaintiffs in that part of the purchase money which the defendant had unlawfully and fraudulently retained and appropriated.

The answer of the defendant denied all the charges of fraud

made in the petition, and alleged that the defendant made the. sale of the plaintiffs' half of the property by virtue of a power of attorney authorizing him to sell it for $200,000, and stated facts showing, as the defendant insisted, that he was guilty of no fraud in procuring the power of attorney; and that the plaintiffs, before executing it, were fully advised by the defendant of his purpose to sell his own half of the land for a larger price than that for which the power of attorney authorized the sale of the plaintiffs' half, the defendant' undertaking to pay all the expenses of bringing about a sale; and that, with full knowledge of the facts, plaintiffs agreed to the arrangements for selling the property and executed the power of attorney.

The pleadings and the bill of exceptions, which embodied all the evidence, disclosed the following facts respecting the parties below : The plaintiffs, on or before November 6, 1871, were the owners of an undivided half in common of certain lots, forming a part of what was known as the Central Tract, situate in the city of Cleveland, in the State of Ohio, and the defendant, Stone, was the owner of the other undivided half in common. For several years previous to November 6, 1871, and until the sale of the property as hereafter mentioned, the defendant was the agent of the plaintiffs, having the charge and management of their estate in said property, with power to " work up " sales of the same, either in parcels or as a whole, but without power to make contracts of sale or to convey. On or about November 6, 1871, the defendant, who was a resident of Cleveland, sent by mail to the plaintiffs, who resided in New York, a power of attorney, dated November 7, to be executed by them, which, when executed, would authorize him to sell, by contract in writing, their undivided half of the real estate above mentioned for the consideration of $200,000, of which $40,000 was to be paid cash down, and the residue in eight annual payments of $20,000 each, with interest at six per cent., to be secured by mortgage on the property sold. The authority conferred by the power was to expire in sixty days from the date of the power. In a letter written by the defendant to the plaintiffs, which enclosed the power of attorney, and which bore date November 6, 1871, the defendant said, referring to

the power of attorney: "I think I can sell, on the terms therein set forth, the land therein mentioned to a responsible party, within sixty days from now, and perhaps by the first of December next, but, in order to do so, entire secrecy must be observed in regard to the matter, and I must be allowed to bring about the sale in my own way." He added: "I advise the sale and desire an immediate reply. If a sale is made, I expect to make special terms for my interest." After the receipt of this letter and the draft of the power of attorney, to wit, about November 12, the plaintiffs sent their agent, Mr. Tatlow Jackson, to Cleveland, with a letter to the defendant, in which they said: "He," Mr. Jackson, "goes at our express request to confer with you in reference to the subject matter of yours of the sixth instant. You will oblige us by communicating to him as freely as you would to us. The proposition contained in your letter is of such magnitude as to enjoin the most thorough canvass and consideration—hence Mr. Jackson's mission."

There was evidence tending to show that Jackson passed three days in Cleveland, much of the time in the company of the defendant; that he was taken by the defendant over, and shown a large part of, the city, and that the land in question was shown to him, and its situation explained by the defendant; and that during that time the defendant repeatedly told Jackson that he would not sell his half of the land for the price he had named in the power of attorney as the price for the plaintiff's half, but would demand a larger price, and gave, as reasons why he was entitled to more for his half than the plaintiffs were for theirs, that he could make a good title at once, which the plaintiffs, on account of the encumbrances on their half, could not do; that there would be large expenses incurred in bringing about a sale, which he expected to pay, and the payment of which would compel him to sell other lands; that he might be compelled, in order to make a sale, to put other property out of the market by buying it; that he had made expensive improvements on other property belonging to him in Cuyahoga Valley, with a view to enhance the value of the Central Tract, which embraced the property in question; and

that the use to which their common property might, if sold, be put would depreciate the value of other adjacent real estate on the Cuyahoga River owned by him.

On November 17, 1881, which, as the testimony tended to show, was about the close of his visit to the defendant in Cleveland, Jackson wrote a letter to Day, one of the plaintiffs, which was received by the person addressed, in which he said: "I am confirmed in the opinion that you had best permit Mr. Stone to do as he thinks best with the Central Tract. I put it to him that you would prefer to go half-and-half with him in any sale he might make, in place of putting any valuation on your half interest. He responded that it was probable that, for his half interest, he might have to make a trade, which would bring in some other property belonging to him, making it impossible for such an arrangement, and that he intended to sell with you—that is, that he is not a purchaser."

Evidence was also introduced tending to show that, on December 1, 1871, Charles Day, one of the plaintiffs, had an interview, in Cleveland, with the defendant, in reference to the sale of the property, in which interview the defendant told him that, if the sale was made, he was unwilling to divide the property equally; that if he sold his half he should sell it for more than the price named in the power of attorney; that he did not want the power of attorney, unless he was going to be left perfectly free to manage his half. To which Day replied, that the power of attorney would come very quick after he got back to New York; that he was perfectly satisfied and ready to sell the property; and that, in the same interview, the defendant told Day, as reasons why he proposed to demand more for his half of the property than he demanded for the plaintiffs' half, that he intended to pay the expenses of the sale, that he had to use land for that purpose, and might have to buy other land.

On the same day, December 1st, Day wrote to his co-plaintiff, Barlow, as follows: "After a lengthy interview with Mr. Stone, I am strongly inclined to believe that we had better authorize him to sell that portion of the Central Tract, 485 lots, in the manner proposed by him;" and then, after giving his

reasons for the opinion, added, "I therefore think it wise to conform to the terms of his proposition."

Testimony was giving to the jury tending to show that afte· all this, and about December 7, the power of attorney sent by the defendant to the plaintiffs, was executed by them and mailed to the defendant, who received it about December 9.

After receiving from the plaintiffs the power of attorney, the defendant, on December 9, 1871, made a written proposition to the Cleveland, Columbus, Cincinnati & Indianapolis Railroad Company for the sale to it of the entire tract of land for $500,-000, and added, "For one undivided half of the property I am prepared to give a good and sufficient warranty deed, free of encumbrance, and take a mortgage to secure the deferred payments; for the other half, which is slightly encumbered, I am prepared to give a contract from S. L. M. Barlow and Charles Day, who hold the legal title and will speedily clear it of encumbrance, and have consented that the cash payment and the contract itself shall be placed in the hands of the Society for Savings until they can make a clear title."

In pursuance of this proposition a contract was executed bearing date December 16, 1871, by which the plaintiffs, acting by the defendant as their attorney in fact, sold and agreed to convey their undivided half of the premises to the railroad company for the consideration of $200,000, in the instalments mentioned in the written proposition of December 9, which the railroad company agreed to pay. The contract was executed in less than sixty days after the date of the power of attorney, and was in all respects in conformity with the authority conferred thereby. The defendant, by a contract also dated December 16, 1871, agreed to convey by a deed of general warranty his own undivided half of the same premises to the railroad company for the consideration of $300,000, sixty thousand dollars whereof was to be paid on the delivery of the deed, and the residue in eight annual instalments of $30,000 each. The latter contract contained a provision that unless the plaintiffs within one year delivered the deed to the railroad company for their undivided half of the land, the railroad com-

pany should elect whether it would carry out its contract with the defendant or rescind the same.

There was some evidence tending to show that $200,000 was a fair price for the plaintiffs' undivided half of the land, and there was no evidence that when the power of attorney was executed the plaintiffs were ignorant of its value.

There was no evidence tending to show that before December 7, 1871, the day when the power of attorney was executed by plaintiffs, the defendant had received any offer or intimation from the railroad company that it would pay $500,000 for the property, or that such an offer had been received by the defendant from any one else.

On January 29, 1872, the railroad company, on account of the precarious health of the defendant, decided to receive at once his deed for his share of the property. The deed was executed and delivered on that day, and the railroad company paid the defendant $60,000 of the consideration and gave its note, secured by mortgage, for the residue. In July following the plaintiffs, having cleared the encumbrances from their half of the property, executed a deed therefor to the railroad company and received $40,000, the cash payment of the consideration, and notes secured by mortgage for the deferred payments.

Upon this state of the evidence the court, besides other charges, gave the jury the following :

"It is not enough that the defendant should have written the plaintiffs, when he applied for the power of attorney, that he expected to make special terms for himself, or that he should have told the plaintiffs or their agent that he would not sell for the price fixed by them, but expected to get more for his share. He cannot claim and take to himself the benefit of the discrimination in his favor, unless the evidence satisfies you that he had fully communicated all the facts to the plaintiffs before he consummated the sale—all the facts known to him in relation to the chances of selling—so as to enable the plaintiffs intelligently to decide whether they would consent to the proposed discrimination in defendant's favor or not. Such would be the rights of the parties, even if the defendant did not know or had not reason to believe, before he accepted the said

power of attorney, and undertook to execute it, that the land could be sold for more."

The bill of exceptions states that "the jury, having been charged by the court, retired for deliberation, and, after being out for the space of about one day, came into court and made a written request to the court for further instructions as follows :

"'Shall the jury understand the court to charge that the defendant is liable as agent, if it is found that he failed to reveal any material facts tc plaintiffs relative to the value of the property and terms of sale ?'

"And thereupon the court gave to the jury the further instruction or charge following, to wit:

"In answer to your inquiry, propounded by your foreman, I have to repeat that an agent is required by law to deal fairly with his principals in all things. One contention of the defendant in this case is, that the power of attorney under which the defendant made the sale of the plaintiffs' interest in the land, fixed the price and terms of the sale; and that plaintiffs were concluded by the authority thus given. This would be true, if the defendant obtained the power after fully and fairly communicating to them all the knowledge or trustworthy information which he possessed, so that they could as well judge of the value of the property, and the propriety of selling it on the terms authorized by the power, as the defendant could himself do. But if he failed to communicate the facts, and thereby induced plaintiffs to execute to him the power under which he acted in making the sale and conveying the title to the purchaser, plaintiffs could not be concluded or estopped by reason of anything contained therein.

"The court further instruct you that if you shall find that the power of attorney was obtained fairly, and after the communication by defendant to the plaintiffs of all the material facts and information, as aforesaid, but that he ascertained afterwards that he could sell the land, the whole of it, at $500,000, and that he refused to disclose the price or the name of the purchaser, but undertook to bring about the sale in his own way, he was in duty bound to accept the offer of $500,000

made by the purchasers, as well for his principal as for himself; and if he, instead of making the sale for the benefit of both, sold plaintiffs' part for $200,000 and his own for $300,000, he is not authorized to retain the excess to himself, but that he is, in equity and good conscience, bound to share the same with his principals, unless he made a full disclosure to them of all the facts material for them to know, and they, with such full knowledge and for reasons which they deemed sufficient, consented to the unequal division of the purchase money which the defendant made of it. If he did not so disclose the material facts in regard to the value or the amount received, and obtain plaintiffs' consent that he might retain three-fifths of the purchase money, as it is admitted he did, the plaintiffs are entitled to recover the one-half of such excess, so received and retained by defendant, as per my former instructions."

The jury again retired, and, after further deliberation, returned a verdict for the plaintiffs for $57,944.82, for which sum, with costs to be taxed, the court rendered judgment against the defendant. To reverse that judgment this writ of error is brought.

The defendant below, plaintiff in error in this court, assigned for error the charges of the court above recited.

*Mr. J. M. Adams* and *R. P. Ranney* for plaintiff in error.

*Mr. Stevenson Burke* (*Mr. William B. Sanders* was with him) for defendants in error.

MR. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

We think there was error in the charges complained of. To test their correctness we must assume the truth of the facts which the testimony submitted to the jury tended to prove. It was the duty of the court to submit to the consideration of the jury the testimony adduced by the defendant to sustain the defences set up in his answer, and the charge should have been based on the hypothesis that the defences which the testimony tended to prove were proven. The evidence tended to show that no fraud was practised by the defendant in procur-

ing the power of attorney; in fact, the charge proceeds on this assumption; it tended to show that the plaintiffs, after full conference with the defendant, consented that he might secretly conduct the negotiations for the sale, that he might manage the sale of the property in his own way, and that he should be free to dispose of his own half as he pleased; that, in case he sold their half for $200,000, he might sell his own half for any price he could get. If the plaintiffs gave their consent in advance of any sale, it was immaterial to them what price the defendant got for his share of the land, and he was under no obligation to disclose the price to the plaintiffs and ask their consent to retain it. The effect of the charge of the court was to withdraw from the jury all the evidence tending to show the antecedent assent of the plaintiffs, fairly obtained, to the sale made by the defendant, and to instruct the jury that nothing but their subsequent assent could be effectual. This was error. *Adams* v. *Roberts*, 2 How. 486; *Reese* v. *Beck*, 24 Ala. 651; *Grube* v. *Nichols*, 36 Ill. 92; *Chappell* v. *Allen*, 38 Missouri, 213, 220.

The charge having assumed that there was no fraud in the procuring of the power of attorney, and the defendant having submitted testimony tending to show that there was no fraud in his doings after the power of attorney was procured, but that whatever was subsequently done by him in making the sale was done with the consent of the plaintiffs given in advance, it was error to charge the jury that the plaintiffs were entitled to recover, unless the defendant informed the plaintiffs at what price he could sell or had sold his share, and they renewed their consent that he might retain it.

For the error indicated

*The judgment of the Circuit Court must be reversed, and the cause remanded, with directions to grant a new trial; and it is so ordered.*