CHICAGO, ROCK ISLAND & PACIFIC
RAILROAD COMPANY, a corpo-
ration, Appellant,

v.

George W. LINT, Appellee.

No. 15102.

United States Court of Appeals
Eighth Circuit.

Nov. 19, 1954.

**280**

Philip Stringer, St. Paul, Minn. (Robert O. Sullivan, Arthur J. Donnelly and R. Paul Sharood, St. Paul, Minn., on brief), for appellant.

Donald A. Chapman, Jr., Minneapolis, Minn. (Davis, Rerat, Yaeger & Lush, Minneapolis, Minn., Harry H. Peterson and Robert M. Austin, Minneapolis, Minn., on brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This action is for personal injuries and admittedly arises under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Plaintiff (appellee) was a brakeman on defendant's railroad and at the time of the collision was serving on a freight train crew delivering cattle at Walnut, Iowa. His duty was to signal the engineer to enable proper spotting of cars at the unloading chute. He was standing on a stock unloading platform about six feet wide to do this. He had no other duties relating to unloading the cattle. The platform leads from the box car to an enclosed ramp leading to the ground. At the top of the ramp are two gates which, when open, serve as an extension of the fence along the sides of the ramp to the car door, thus making continuous sides from the car door to the ground. Each gate swings on two pintle hinges constructed as follows: attached to the post is a vertical pin 3½ inches long; cylindrical metal bands or straps attached to the gate fit snugly over the pin. Each gate weighs about 240 pounds.

In the process of unloading the third car three head of cattle rushed out of the car at once and by their impact lifted the east gate off of the pintles. Plaintiff was standing on a narrow portion of the platform outside of the gate and was forced off the platform by the falling gate causing his injuries complained of. Larson, an architect, testified for plaintiff that there are three types of hinges, the fast pin hinge, the loose pin hinge and the pintle hinge, and that of these the pintle

hinge is the least safe, and that in his opinion the pintle hinge was unsafe for the purpose for which it was being used. He said further that the pintle hinge could have been made safe by threading the top of the pintle and putting on a lock nut, or by drilling a hole and inserting a cotter pin or by bending over the top of the pintle; that this particular hinge was not a good type of pintle hinge because there was nothing to prevent the pintle from tipping over.

Defendant produced testimony that the pintle hinge, like the one used here, now is and has been in use for many years and is standard equipment on cattle gates on the 7,000 miles of track on the Rock Island system. This type of hinge is also shown to be in general use on farm gates. There had not been any previous dislodging of the particular gate involved in this action or of the many similar gates on the system so far as witnesses knew. One of the defendant's witnesses had been with the defendant company thirty-eight years and for sixteen years had supervision of all stock unloading platforms at two hundred locations, and another, a conductor, had twenty-eight years of service. The plaintiff had been with the railroad since 1944 and admitted that he was thoroughly familiar with the type of gate and hinge used and that equipment at other stations was similar. Plaintiff had never seen or heard of such a gate becoming dislodged and he had foreseen no danger in this respect. Plaintiff's witness Suhr testified he was familiar with the Walnut yard for over thirty years, that he had frequently assisted in unloading cattle and had never seen or heard of the gate being knocked off its hinges. There is no evidence that a similar accident has ever previously occurred.

Plaintiff's contention is that defendant violated its duty imposed by the Federal Employers' Liability Act, 45 U.S.C.A. Sections 51 to 60, to provide him with a safe place to work, in that defendant "violated that duty by use of the pintle hinges in question for the reason that it knew, or must have known, that the gate in question was apt to come off said hinges and cause harm to its employees, including plaintiff." Defendant at the close of the evidence made a motion for a directed verdict, and after the adverse verdict, a motion for judgment notwithstanding the verdict based on its contention that there was "no evidence of negligence on the part of the defendant where the sole evidence was that this gate hinge and this kind of hinge has been in customary and continuous use for this purpose for many years without accident and no one whatever had any idea or had foreseen that any accident might occur or that any hazard might be involved therefrom".

The question confronting us is whether the plaintiff has made out a case of negligence such as to entitle him to go to the jury. In approaching this problem we shall first summarize the applicable principles of law.

■■ The employer under the Federal Employers' Liability Act is required to furnish his employees a safe place to work and safe appliances. 45 U.S.C.A. Sections 51–60. However, it has uniformly been held that liability arises from negligence not from injury. Brady v. Southern R. Co., 320 U.S. 476, 484, 64 S.Ct. 232, 88 L.Ed. 239; Chicago, St. P. M. & O. R. Co. v. Arnold, 8 Cir., 160 F.2d 1002, 1006.

In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282, the Court says:

"What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs. * * *

"Negligence within the meaning of the Federal Employers Liability Act attached if respondent 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to

protect petitioner and similarly situated employees."

In Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 417, 93 L.Ed. 497, we find: "Much of respondents' argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries. * * * But the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances', bearing in mind that 'the standard of care must be commensurate to the dangers of the business.' "

■ In considering the motion to direct verdict all facts which plaintiff's evidence reasonably tends to prove must be assumed to have been established and all inferences fairly deducible from such facts must be drawn in his favor. Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 122 A.L.R. 987; McGivern v. Northern Pacific R. Co., 8 Cir., 132 F.2d 213. In Brady v. Southern Ry. Co., 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239. The Supreme Court, in speaking of the law applicable to the direction of verdicts, lays down the following test: "When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims." In the above cited case it is also said: "The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury."

In Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, the Court speaks as follows: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

The Supreme Court has granted certiorari in many cases arising under the Act. A list of such cases, showing their disposition, is attached as an appendix to Justice Douglas's opinion in Wilkerson v. McCarthy, 336 U.S. 53, 71, 69 S.Ct. 413, 93 L.Ed. 497. Judge Johnsen has reviewed this situation in Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164, 166 and there says in part: "In this connection, heed necessarily must be given to the unmistakable teaching of the Supreme Court in its recent decisions, that trial and appellate courts, both federal and state, on questions of liability under the Federal Employers' Liability Act, have been taking too narrow a view generally of the scope of permissive inference which is open to a jury on 'probative facts.' "

■ The fact that there may have been a safer method than that employed, or that danger might have been avoided by action in a different manner, does not

necessarily make an act negligent. 65 C.J.S., Negligence, § 2(i), page 330; McGivern v. Northern Pacific R. Co., supra; Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419.

The decisive question in this case is whether the pintle hinge here used was such a hinge or device as would be provided by a person of ordinary prudence under the same or similar circumstances, having in mind his duty to furnish a safe place to work and reasonably safe appliances. The jury found that defendant had failed to exercise due care in furnishing this appliance. Is there evidence in the record to sustain such a verdict?

■ In resolving this question we must keep in mind the principle that for purposes of determining this question the evidence and all inferences that may reasonably be drawn therefrom must be viewed in the light most favorable to the plaintiff. The jury could readily find that the purpose of the gate was to restrain cattle while they were being unloaded. The defendant is charged with knowledge of the propensities of animals such as cattle—2 Restatement Torts, 290; Northern Pacific R. Co. v. Minnesota Transfer R. Co., 219 Minn. 8, 16 N.W.2d 894. The same type of hinge was in general use by the defendant in its many yards and hence defendant was familiar with its design, construction and operation and thus had knowldege of its potentialities and its suitability for the purpose for which it was being used. There is evidence from which the jury could find that the pintle hinge was not suitable for its intended purpose. Larson testified: "The pintle hinge is the least safe or secure of any of the hinges because all it takes is a slight upward movement on the gate or door turning on a pintle hinge to cause the gate or door to topple over. I would consider this a very makeshift and unsafe type of hinge because of the objections I have previously given to the use of either the loose pin or pintle type of hinge and also because in this installation there is no particularly secure fastening on the post end of the hinge."

■■ It can be argued that the experience of the witness in this type of construction is rather limited and that his testimony was weakened on cross-examination. However, generally the credibility of the witness and the weight to be given his testimony are for the jury rather than the court, and this rule seems to be very strictly applied in Federal Employers' Liability Act cases.

■ There was also evidence that the hinge could be made safer at modest expense. It was possible under the record for the jury to find that an ordinarily prudent person in the exercise of ordinary care under the circumstances would anticipate that there was danger of the gate being knocked off of this kind of hinge and would have used a safer kind of hinge or a safety device. The plaintiff has made a prima facie case for the jury.

■ Defendant has introduced uncontroverted evidence that for many years it used the same type of hinge, similarly installed, at all its yards and that farm gates in the territory are generally so equipped and that there has been no previously known accident such as happened here. Such evidence is admissible and is very persuasive but under the record here made would fall under the general rule that the weight of the evidence is for the jury unless defendant can establish its contention that it has established a custom, that the customary way is per se the standard of care, and that he has fully complied with the custom.

The evidence covers only the use of the hinge by the defendant. There is no evidence that railroads or other large handlers of cattle in the territory generally use this type of hinge. There is evidence that many farm gates are so equipped but the situation of restraining animals in large farm enclosures is far different from the manner of confining a large number of cattle in a narrow chute. It would seem that the circumstances surrounding the farmer are not similar, at least as a matter of law, to the circumstances svrrounding the defendant.

An individual or an individual corporation certainly can not set up his customary way of meeting a situation as a conclusive standard of care. Since no general trade custom has been established relative to gate installations, we are not directly confronted with the question of whether the customary way the situation is handled within a trade or industry is per se the standard of care. However, it would seem that such is not the rule in Federal Courts. In Texas & Pacific Railway Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905, the defendant contended that the court should have instructed that the defendant's liability depended on whether the freight train was handled in the usual and ordinary way. As to this, the court, speaking through Mr. Justice Holmes, says: "Instead of that, the court left it to the jury to say whether the train was handled with ordinary care; that is, the care that a person of ordinary prudence would use under the same circumstances. This exception needs no discussion. The charge embodied one of the commonplaces of the law. What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." See also Terminal Railroad Ass'n v. Shorb, 8 Cir., 151 F.2d 361; Frizzell v. Wabash R. Co., 8 Cir., 199 F.2d 153; American Car & Foundry Co. v. United States, 8 Cir., 211 F. 862; Hellweg v. Chesapeake & P. Telephone Co., 71 App. D.C. 346, 110 F.2d 546; Annotation 68 A.L.R. 1400.

■ It follows that a case was made for the jury on the issue of whether the defendant in providing the pintle hinges hereinbefore described was exercising the care of a reasonable and prudent person under the same or similar circumstances. There was no error in overruling the motion for directed verdict or for judgment notwithstanding verdict.

The defendant with his motion for judgment notwithstanding verdict in the alternative moved for a new trial, which motion was overruled. While said motion sets out a number of grounds, the only error urged in argument and the only error reviewable upon appeal relates to the court's refusal to give requested instructions numbers 1, 2, 3, 4, 5, 8, 10 and 11. Defendant submitted such requests in full compliance with Rule 51, and timely exception was taken to the court's refusal to give them. Requests number 2 (failure to exercise due care is negligence) and number 5 (remote possibilities need not be guarded against) appear to be adequately covered by the court's instructions. Requests number 9 (scienter), 10 (custom) and 11 (issue is design of hinges not of defects) do not appear to have sufficient evidentiary support to warrant the giving of such instructions. The remaining requested instructions are as follows:

1. The fact, standing alone, that the gate became unhinged and plaintiff was injured as a consequence, does not render defendant liable in this case. Before defendant would be liable, it would be necessary that negligence on its part be established which caused or contributed to plaintiff's injury. The mere happening of the accident, standing alone, does not tend to establish negligence. Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

3. While the defendant was under a duty to exercise reasonable care in providing and maintaining for plaintiff a reasonably safe place to work, this does not mean that defendant was an insurer against all mishaps that might occur, nor that the properties where plaintiff would discharge his duties had to be maintained in a perfect condition. Defendant's duties are measured by reasonable and ordinary care under like circumstances; and if you find that that degree of care was exercised here, your verdict will be for the defendant. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497.

4. In measuring the standard of care, it is not fair to take a point of view after the accident and impute negligence from the light of after events. In measuring the standard of care, the point of view to be taken should be that before the

accident occurred, to see what, in the light of the facts then known, should have been anticipated. Burke v. Witherbee, 98 N.Y. 562.

8. In measuring the duty to anticipate—that is, in considering how much and how far the defendant ought to go in foreseeing and guarding against possible mishaps—the past experience respecting the device or situation in question may properly be drawn upon. It is entirely proper to take into account the fact that no accident of this kind is known to have occurred in the past, as bearing upon and indicating what should have been foreseen for the future. Charnock v. Texas & Pacific R. Co., 194 U.S. 432, 24 S.Ct. 671, 48 L.Ed. 1057.

 The citations following the above requests for instructions are those given by defendant in its brief. The correctness of the requested instructions is not challenged by the plaintiff. His position is that the trial court's instructions adequately covered the applicable law. If plaintiff's position in this respect is correct there would, of course, be no error in refusing the requested instructions. Chicago & Northwestern Ry. Co. v. Curl, 8 Cir., 178 F.2d 497; Thiringer v. Barlow, 10 Cir., 205 F.2d 476.

Defendant took no exceptions to the instructions given and makes no objection to them now. In any event there is nothing to review as to the instructions given in the absence of proper exceptions.

The right given by Rule 51 of Federal Rules of Civil Procedure to request instructions is a valuable right. In discussing this problem this court, in Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55, 61, says: "We think the refusal of the court to give the requested instruction, either in its tendered form or in a restatement of its material substance, was error. It has long been the rule that, as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made. 53 Am.Jur., Trial, § 626, pp. 487,

488. See also Western Union Tel. Co. v. Morris, 8 Cir., 105 F. 49, 54; Northern Central Coal Co. v. Hughes, 8 Cir., 224 F. 57, 59; Ranney v. Barlow, 112 U.S. 207, 214, 5 S.Ct. 104, 28 L.Ed. 662; Pennock v. Dialogue, 2 Pet. 1, 15, 27 U.S. 1, 15, 7 L.Ed. 327." See also, Henwood v. Coburn, 8 Cir., 165 F.2d 418; Montgomery v. Virginia States Lines, 89 U.S.App.D.C. 213, 191 F.2d 770.

The treatment of the legal issues in the instructions given is very general. It would appear that requested instructions 1, 3, 4 and 8 are substantially correct statements of applicable law supported by evidence. They are not attacked by plaintiff, nor does plaintiff point out where their substance is covered in the instructions given. Plaintiff does, however, make the general claim that the instructions given are fully adequate. The requested instructions involve some overlapping and are not approved as model instructions. They could, no doubt, be consolidated and re-stated in abbreviated form and combined with the balancing instructions.

 It is necessary to consider the instructions given by the court to determine whether they properly covered the field of the requested instructions. The court, after stating the issues and advising the jury that the action is based on negligence and defining negligence and ordinary care, states:

"The plaintiff contends in this case that the defendant was negligent in providing a door to the cattle chute on hinges that were dangerous and unsafe and that would permit the gate to become unhinged; that the gate as a result became unhinged and fell upon the plaintiff and knocked the plaintiff from the platform on which he was engaged in the performance of his duties to and upon the ground, as a result of which he was injured.

"It was the duty of the defendant to furnish the plaintiff a reasonably safe place to work and reasonably safe equipment with which to work, and *if the defendant failed to*

*use reasonable care in the performance of that duty by providing a livestock loading chute and a gate thereto that were defective and unsafe due to defective or insecurely fastened hinges,* and that as a result the gate became unhinged and fell in such a manner as to strike the plaintiff and knock him from the platform to and upon the ground when he was standing on the platform of the chute and engaged in the performance of his duties as a brakeman in the usual and customary manner on September 29, 1952, at the time of the accident, then the defendant was negligent, and if such negligence, in whole or in part, was the proximate cause of the accident, and injuries to the plaintiff, your verdict should be for the plaintiff.

"On the other hand, if you find from the evidence in this case that the defendant railroad company used reasonable care in the construction and maintenance of the livestock chute and the gate thereto attached for loading and unloading stock at Walnut, Iowa, *so that the premises were reasonably safe for the plaintiff and employees of the railroad company for use in the performance of their work,* then the railroad company was not negligent, and your verdict should be for the defendant.

"No one is required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen.

"If a person had no reasonable ground to anticipate that a particular act would or might result in injury to anybody, then the act would not be negligent at all."

The emphasized portions of the court's instructions could very easily give the jury the impression that they could find for the plaintiff if the gate was defective due to defective or insecurely fastened hinges, or if the premises were not reasonably safe, or, in other words, that the standard of care was to furnish safe gates and a safe place to work. The true measure of *defendant's liability and its obligation in this case is to use the care a reasonable and prudent person would use under the same or similar circumstances in providing safe equipment and a safe place to work.* The requested instructions, particularly request number 3, would have made it clear to the jury that the defendant was not an insurer of its employees' safety, that liability could not be based on the accident alone and that liability should turn on the question of whether due care was exercised in providing the equipment furnished under the circumstances. In Chicago, St. P. M. & O. R. Co. v. Arnold, 160 F.2d 1002, 1006, this court said that the trial court properly instructed the jury that the Railway Company was not an insurer of its employees. It is often difficult for jurors to understand technical and abstract legal propositions even though they may be correctly stated. There was relatively strong evidence in this case on the issue of ordinary care by the defendant. We believe that it was entitled to have its theory of the defense, to-wit that it had used due care in furnishing the gates and equipment, more specifically explained to the jury by setting out the substance of the matters requested in instructions 1, 3, 4 and 8, and that the Court's failure to give such instructions, or the substance thereof, was reversible error.

The order of the trial court in overruling defendant's motion for a directed verdict and defendant's motion for judgment notwithstanding verdict is affirmed, but for errors of the Court in denying the requested instructions as herein above pointed out, the judgment is reversed and the cause is remanded to the trial court with directions to grant a new trial.