**CHICAGO GREAT WESTERN RAILWAY COMPANY, a Corporation,**
**Appellant,**

v.

**Guy P. SMITH, Appellee.**

**No. 15398.**

United States Court of Appeals
Eighth Circuit.

Dec. 28, 1955.

Vance B. Grannis, South St. Paul, Minn. (Grannis & Grannis, South St. Paul, Minn., on the brief), for appellant.

Paul F. Clements, Minneapolis, Minn. (Davis, Rerat, Yaeger & Lush and Donald A. Chapman, Jr., Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The plaintiff (appellee) commenced this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages from the defendant, a railroad admittedly engaged in interstate commerce, for injuries received while plaintiff was working for defendant as a brakeman on a freight train on June 17, 1953, at Tripoli, Iowa. The jury found for the plaintiff, and this is an appeal from final judgment based upon the verdict.

Plaintiff contends that his injuries were proximately caused by the negligent failure of the defendant to provide plaintiff with a safe place to work and by defendant's failure to provide and maintain a reasonably safe and proper walkway. At the time of the accident the freight train was spotted opposite a produce house for the purpose of picking up eggs. Plaintiff, as part of his assigned duty of helping to load freight, was carrying crates of eggs across a walkway made of old railroad ties laid at right angles to a spur track adjacent to the produce company. Plaintiff made seven or eight successful trips carrying crates of eggs to the freight car. Plaintiff's version of the accident is as follows:

"At the time I was injured, I went to get my crate of eggs and I picked it up and I took a turn to the west, I guess, and I took a couple of steps forward and I stepped into one of them ties and it rolled under my foot, or crumbled, and pitched me forward, and I was throwed out over the edge. My heel struck the outside rail. I did not fall completely to the ground and no part of my body actually fell on the ground. When I regained my balance the crate of eggs was rested on the side of the ties. I had taken one or two steps before I stepped on the tie that rolled under my right foot. The tie rolled as I was stepping down. My foot went down in between the ties and I was thrown forward, and by the time I regained my balance I was off the ground. My foot caught momentarily. At that time it felt like my back snapped—like something broke in there. My body bent and I went forward over the right side or west side of the platform. My right heel struck the south rail of the spur track and then went off the rail. My body twisted. When I regained my balance, the crate of eggs was setting on the edge of the ties. I was suffering terrible pain in my

lower back at that time and also in both legs. To the best of my recollection, the tie that rolled was the second, third or fourth tie from the west side. It was an old tie, all chewed up. Some of these ties were rotted and there was a space of three or four inches between some of them."

The facts will be further developed hereinafter.

Defendant in its motions for a directed verdict and for judgment notwithstanding the verdict, which motions were overruled, assigned in support of such motions the grounds upon which it now relies for reversal, namely:

I. Plaintiff has failed to prove any causal connection between the alleged negligence of the defendant and the disc injury which he claimed.

II. There was insufficient evidence to go to the jury on the question of defendant's negligence and notice of the alleged defect which was claimed to have caused plaintiff's injury.

 In considering the sufficiency of the evidence to sustain a verdict, the evidence must be viewed in the light most favorable to the prevailing party. All conflicts in the evidence must be presumed to have been resolved in favor of the prevailing party, and he is entitled to all favorable inferences that may be drawn from the facts proven. National Alfalfa Dehydrating & Milling Co. v. Sorensen, 8 Cir., 220 F.2d 858, 862; Chicago, R. I. & P. R. Co. v. Lint, 8 Cir., 217 F.2d 279, 282. The court in Federal Employers' Liability cases is required to take a liberal view of the scope of permissive inferences open to the jury. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Louisville & Nashville R. Co. v. Botts, 8 Cir., 173 F.2d 164, 166; Chicago R. I. & P. R. Co. v. Lint, supra.

I. We shall first consider defendant's contention that plaintiff has failed to prove any causal connection between the alleged negligence and the injury. Defendant's witness, Dr. Smith, who operated on plaintiff's back in October 1953 testified that plaintiff's difficulty was caused by a degenerated disc, that it takes many months to develop a degenerated disc, and that a degenerated disc finally reaches the breaking point where any form of straining, such as lifting, coughing, or bending over, will cause a rupture. Plaintiff relied largely on the testimony of Dr. Titrud, a qualified neuro surgeon. On direct examination, in response to a hypothetical question assuming facts for which there was evidentiary support in the record, Dr. Titrud testified that he could state with reasonable medical certainty whether or not the accident described was the cause of plaintiff's injuries and damage. He then expressed the opinion that the described accident was the cause of plaintiff's injury. In Bearman v. Prudential Ins. Co. of America, 10 Cir., 186 F.2d 662, which case is cited by the defendant, the test of the sufficiency of the medical testimony to make a jury issue is thus stated at page 665:

"The great weight of authority supports the rule that medical expert testimony to be sufficient to take the case to the jury must be to the effect that the accident or injury probably caused the Insured's death; and that testimony to the effect that a causal connection between the accident or injury and Insured's ensuing death was possible, such as testimony that the accident or injury 'might have,' or 'may have,' or 'could have' caused the death of Insured, is insufficient to take the case to the jury, because such testimony leaves the issue in the field of conjecture and permits the jury to speculate or guess as to the cause of death."

In Kenney v. Chicago Great Western Railway Co., Minn., 71 N.W.2d 669, at page 673, the court states:

"* * * Ordinarily a finding of proximate cause is reserved to the jury. As we recently stated in Berg v. Ullevig, Minn., 70 N.W.2d 133, 138:

" '* * * The test, of course, is not whether the trauma resulting from another's negligence might, only in the realm of possibility, have been a factor in producing a certain result, but whether it was a factor or at least a probable factor in producing the claimed result.' "

See also Annotation, 135 A.L.R. 516.

■ It seems clear that Dr. Titrud's response to the hypothetical question was sufficiently definite to support a jury finding that there was a causal connection between the accident and the injury.

Defendant's principal contention appears to be that the cross-examination of Dr. Titrud destroyed the force of his direct testimony, defendant quoting in its brief and relying upon the following cross-examination:

"By Mr. Grannis: Q. Yes, but if it happened, Doctor, that the man lifted a fifty- or sixty-pound weight at the same time, or a matter of a second or two prior to the time he claimed that he turned his back, it is impossible to tell, isn't it, whether the so-called disturbance to his disc was the result of the lifting or of the turning of his back? A. Well, it could be due to—

"Q. Either one? A. Either, except that I suppose that whichever was the most forceful incident would logically be the most responsible agent.

"Q. And, of course, you have no way of telling that, do you, Doctor? A. No, but that's defensible."

Dr. Titrud on cross-examination also testified as follows:

"Q. Yes. Then there is no way of telling for sure whether it occurred as a result of lifting something or twisting the back? A. Well, yes, there is. If they developed a nerve root irritation injury with prolapsed disk, their difficulty will practically always have its onset at the time of that event and will per-

sist. I mean, that tends to fix the time when that trouble occurs."

The hypothetical question propounded contained the statement that the plaintiff felt a sharp pain in his back when he pitched forward and twisted.

We have carefully considered all of Dr. Titrud's testimony. We do not believe that it can be said as a matter of law that his cross-examination went to the extent of destroying the opinion so clearly expressed on direct examination that he was reasonably certain that the accident caused plaintiff's injury. In considering the weight to be given to the testimony of Dr. Titrud the jury, of course, could consider any inconsistencies that might appear in his testimony. We are convinced that the testimony of Dr. Titrud was sufficient to support a jury finding that the accident was the cause of plaintiff's injury.

■■ II. The record furnishes evidentiary support for the jury finding that the defendant was negligent. Many photographs of the walkway were received in evidence. Such photographs show the uneven surface of the walkway, and the crumbly condition and spacing of the ties. Plaintiff's testimony is that his difficulty was caused by a tie crumbling or turning. Defendant contends that plaintiff's testimony is so incredible in the light of contradictory statements made by the plaintiff shortly after the accident that it can not be believed. It is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony.

Defendant in its argument states, "we believe the most significant failure in the plaintiff's proof was in failing to show that the defendant had any knowledge or notice or should have had any knowledge of the alleged loose tie if it was, in fact, loose." Defendant in support of such contention relies upon Kaminski v. Chicago River & Indiana R. Co., 7 Cir., 200 F.2d 1, and Schilling v. Delaware & H. R. Corporation, 2 Cir., 114 F.2d 69. The facts in the cases cited are clearly

distinguishable from the facts in the case now before us for consideration.

In the Kaminski case, where the plaintiff was injured by falling into a hole adjacent to the track, the defect was upon property of an industry served by the defendant, and the court found that there was no evidence of actual notice of the defect by the company, and likewise found that there was no evidence to support a finding that the defective condition had existed for a sufficient time to charge the company with constructive notice. The Kaminski case is distinguished in Beattie v. Elgin, Joliet and Eastern Railway Co., 7 Cir., 217 F.2d 863, where it was held that the greasy condition of the platform existed frequently and recurrently for a sufficient length of time to charge defendant with constructive notice thereof.

In the Schilling case the injury was caused by defendant's failure to keep the space between the ties properly filled. The court found the defendant had no actual notice of the defect, and that the evidence that the defect existed for a sufficient time to charge the defendant with constructive knowledge was meager. Nevertheless, the court refused to hold as a matter of law that the plaintiff had not made a case for the jury.

■ The walkway here involved had been in existence for over six months. Defendant had ample opportunity to be fully informed as to the condition of the walkway since its construction. Plaintiff's contention is that the walkway as originally constructed and as maintained was not a reasonably safe, sufficient, and proper walkway. Section 51 of 45 U.S. C.A., Federal Employers' Liability Act makes the employer liable for injuries to employees caused "by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." It was the duty of the defendant to use reasonable care to furnish plaintiff with a safe place to work. Bailey v. Central Vermont Ry. Co., 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444; Beattie v. Elgin,

Joliet, and Eastern Railway Co., supra, 217 F.2d at page 865; Terminal Railroad Ass'n of St. Louis v. Fitzjohn, 8 Cir., 165 F.2d 473, 477, 1 A.L.R.2d 290. It has uniformly been held that liability under the Act arises from negligence, not from injury. Brady v. Southern Railway Co., 320 U.S. 476, 484, 64 S.Ct. 232, 88 L.Ed. 239. In Urie v. Thompson, 337 U.S. 163, at page 178, 69 S.Ct. 1018, at page 1028, 93 L.Ed. 1282, the Court states:

"* * * negligence, within the meaning of the Federal Employers' Liability Act, attached if respondent 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees. * * *"

In Beattie v. Elgin, Joliet and Eastern Railway Co., supra, 217 F.2d at page 866, the court says:

"* * * Inasmuch as plaintiff at the time of the accident was in a place where his assigned duties required him to be, defendant on the issue of negligence was chargeable with knowledge of the conditions which existed there from time to time which in the exercise of reasonable care it could have ascertained. See S.S. Kresge Co. v. Holland, 6 Cir., 158 F.2d 495, at page 498. In Pacific American Fisheries v. Hoof, 9 Cir., 291 F. 306, at page 308, the court said:

" 'As already stated, the duty (to furnish an employee with a working place and appliances which are safe) is a continuing one, and notice of defects and dangers will be imputed to the master where they could have been discovered by reasonable inspection and by the exercise of reasonable care.' "

In Fleming v. Husted, 8 Cir., 164 F.2d 65, where the employee contended the injury was caused by a defective station platform, this court found evidentiary support for a jury finding that the railroad had negligently failed to exercise reasonable care to make its platform safe

for the uses for which it was intended. See also 38 Am.Jur. Negligence, § 24.

The proper test to be applied in determining liability in this case is whether the walkway here provided was such as a person of ordinary prudence would have provided under the same or similar circumstances, having in mind the employer's duty to furnish a safe place to work. The jury found that the defendant failed to exercise due care in providing the walkway here involved. The record furnishes evidentiary support for this verdict.

The judgment is affirmed.