Carl DULL, Plaintiff,

v.

NEW YORK CENTRAL RAILROAD, a Michigan corporation, Defendant.

Civ. A. No. 20978.

United States District Court
E. D. Michigan, S. D.
July 14, 1961.

Kelly, Kelly & Kelly, Jackson, Mich., for plaintiff.

Patrick E. Hackett, Detroit, Mich., for defendant.

FEIKENS, District Judge.

This matter comes before the Court on defendant-employer's motion to dismiss its employee's complaint for the reason that plaintiff does not state a cause of action under Title 45, Sec. 51, U.S.C.A. (Federal Employers' Liability Act).

Plaintiff proceeds here alleging that the defendant was guilty of direct negligence. He claims that the defendant was negligent in hiring and retaining in its employment plaintiff's co-employee who defendant knew or should have known had a propensity to dangerous horseplay which would and did result in danger and injury to plaintiff. He claims that defendant negligently failed to furnish him with a reasonably safe place to work by allowing the co-employee to be in and about plaintiff's assigned place of work and by requiring plaintiff to work with this co-employee. He says that this negligence culminated in the intentional act of co-employee in pulling a chair out from under plaintiff during working hours and that plaintiff thereby was severely injured.

Plaintiff concedes that he cannot proceed upon a respondeat superior theory —that if he is to prevail it must be upon presentation of proof showing that defendant breached its duty to plaintiff to provide him with a reasonably safe place to work.

At the Court's request and in aid of its consideration of defendant's motion, plaintiff's counsel sets forth an offer of proof in support of plaintiff's allegations in the complaint. This offer of proof, fairly summarized, is that plaintiff and his co-employee were assigned to approximately the same working hours; that they worked in the locomotive department and plaintiff's duties as an engine dispatcher consisted of contacting engine crews by telephone, keeping records of hours of time on engines and other information regarding train crews while the co-employee's duties as hostler consisted of fueling and sanding engines, moving them into and out of the roundhouse and separating engine sections and putting them together; that plaintiff worked at a desk in a building in which in the course of getting his orders co-employee worked; that plaintiff would direct the roundhouse foreman to set up trains at a particular place and time and the roundhouse foreman would give the orders to the co-employee; that when the co-employee had no assigned task, he would "hang around the plaintiff's desk;" that the co-employee on several occasions chased plaintiff and other co-employees, trying to catch their clothing with a packing hook or trying to catch them in the groin or in the rectum with the packing hook; that the co-employee on many occasions engaged in rough and tumble wrestling with other employees; that co-employee and the roundhouse foreman put a Negro employee in the operating shack on the roundhouse turn table and the roundhouse foreman kept the Negro employee in the shack while the co-employee placed torpedos on the track next to the shack and drove an engine over them, and that the Negro employee, becoming terrified by the explosions, tried to break through the windows to get out of the shack; that on a number of occasions the co-employee would place a torpedo in the jaws of a monkey wrench and would drop it in the room where plaintiff and other employees were and that strips of lead attached to the torpedos to enable the torpedos to be clamped to tracks would "fly around the room when the torpedo exploded." Thus—the offer of proof.

Since under pleading requirements of the Federal Rules of Civil Procedure it is not necessary for allegations to be detailed and specific, this offer of proof was elicited from plaintiff's counsel so that the allegations and inferences stemming therefrom for the purposes of defendant's motion could be considered in a light favorable to plaintiff. Assuming these facts to be true, one must reflect carefully upon plaintiff's contention that defendant owed to him a duty to provide him with a reasonably safe place to work and that defendant breached that duty when it retained in its employ an employee who it knew or should have known would and did become dangerous during working hours and in the place of employment. To dispose of plaintiff's case by saying that the co-employee's act in pulling a chair in which plaintiff proposed to sit out from under plaintiff was an act wholly outside the scope of the employment and therefore could not be a legal breach of defendant's duty to plaintiff to provide him with a reasonably safe place to work is manifestly not good law in that it runs contrary to the language of the statute and the decisions construing the statute. Sec. 51, Title 45 U.S.C.A. says in part:

"\* \* \* for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Thus negligence by animate objects (employees) is equally treated with negligence through inanimate objects (appliances, machinery, premises, etc.).

In O'Day v. Chicago River and Indiana Railway Co., 7 Cir., 216 F.2d 79, 83 (a case involving a dangerous area in which plaintiff was required to work) it is written:

"There was evidence which showed that defendant was aware of the dangerous condition; that it knew that employees would be working in that vicinity; that it could have remedied the situation by filling in the ground around the switch; that it instead allowed such condition to exist for a long period of time, and that as a result such hazard did in fact contribute in whole or in part to plaintiff's injury."

In Ft. Worth and Denver City Railway Co. v. Smith, 5 Cir., 206 F.2d 667, 669, (a case involving snow, ice and sleet accumulating on the premises where plaintiff was required to work), it was held:

"\* \* \* within its yard limits (a railway company) must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards \* \*. The duty of providing a reasonably safe place for the carrying on of the work is a continuing one and must be exercised whenever circumstances demand it."

In Chicago, Rock Island and Pacific Railway Company v. Lint, 8 Cir., 217 F.2d 279, 283 (a case involving cattle rushing a railroad car gate, allegedly inadequate, resulting in plaintiff's injury) it was held:

"The jury could readily find that the purpose of the gate was to restrain cattle while they were being unloaded. The defendant is charged with knowledge of the propensities of animals such as cattle—2 Restatement on Torts, 290—."

In Beattie v. Elgin, Joliet and Eastern Railway Co., 7 Cir., 217 F.2d 863, (an action by a railroad foreman against the railroad company for personal injuries sustained in a fall on a steel platform of a coal dumper), it was held:

"Questions of whether presence of oil and grease at place of work created unsafe place to work, whether

injury was caused by such unsafe condition, and whether such unsafe condition had existed frequently and recurrently for such a long time that company had constructive notice thereof, were for [the] jury."

In Affleck v. Chicago and Northwestern Railway Company, 7 Cir., 253 F.2d 249, an action by a railroad employee against his employer for personal injuries, an instruction that it was the duty of the railroad to furnish an employee with reasonably safe appliances and equipment with which to work was not a ground for reversal.

These cases all teach that an employer may breach its duty to its employee to provide him with a reasonably safe place to work under the circumstances set forth.

Can it not be said then that an employer may breach this duty if, as the plaintiff alleges and offers to prove, that it retained a dangerous man knowingly, or under circumstances in which it should have so known, who like defective appliances or unsafe tools or hazardous premises or excited animals in an unsafe enclosure might cause injury to a fellow employee? Why should the plaintiff be permitted his day in court and a jury trial when he alleges and offers to prove that defective tools, dangerous appliances, hazardous premises or excited animals in an unsafe enclosure do not afford him a safe place to work but not be permitted his day in court and a jury trial if the injury comes about by reason of a dangerous fellow employee knowingly so retained by the employer? He cannot be precluded if evidence might indicate breach of a legal duty.

Of necessity these are matters to which plaintiff must be put to his proofs but we cannot say as a matter of law that while he has a right to a trial for breach if injured by an inanimate object, he has no right to trial for breach if the injury comes about through a human being. We cannot say that he has a right to trial for breach if the chair on which he proposes to sit is allegedly defective but that he has no right to trial for breach if a dangerous employee pulls out the chair from under him.

Defendant's motion is denied.